ELIZA O'NEIL, ADM'X, *vs.* MARIA T. McKEWN AND OTHERS.

Congress has power, under the Constitution, to pass a law, making Treasury notes lawful money, and a legal tender in payment of debts payable in dollars and cents, whether such debts were contracted before or after the law wa~ passed.

The "legal tender Acts" of Congress apply to debts contracted before the first of said Acts was passed.

BEFORE LESESNE, CH., AT CHARLESTON, MARCH, 1867.

This was a bill to wind up the estate of Rev. P. O'Neil, deceased, under an order calling in creditors. The trustee of Mrs. Elizabeth Jones presented and proved a claim, by bond and·mortgage, dated 12th November, 1859, the bond being conditioned for the payment of four thousand three hundred and thirty-three dollars and thirty-four cents, in two successive annual installments, the last of which fell due 12th November, 1861. The Master reported the amount due, March 11, 1867, to be $5,047.86, to which should be added $1,080.48, if the claimant was entitled to the premium on gold in United States currency, as it was contended he was entitled, and he submitted that question to the Court.

The following is the judgment of the Circuit Court:

LESESNE, Ch. On reading Master Gray's report, dated March 11, 1867, and hearing Mr. Wilkinson, for the trustee of Mrs. Elizabeth Jones, and Mr. Phillips, for the plaintiff, and Mr. Brewster, Mr. Buist and Mr. Duryea, for creditors represented by them, it is ordered that Master Gray pay to the trustee of Mrs. Jones the cash part of the proceeds of sale of the property that was subject to the mortgage held by the said trustee, and hold the bonds of the purchaser subject to the further order of the Court. It is claimed that the trustee of Mrs. Jones is entitled to have his debt paid in the equivalent of gold in the United States currency, on the ground that the Act of Congress of March 3, 1863, Section 3, making United States notes a legal tender, was not intended to be retroactive, and, therefore, is inapplicable to this debt, which was contracted before its passage. The fund reserved will be more than sufficient to cover the residue of the debt, if this claim be allowed.

The question of the constitutionality of this Act—involving in it, also, as I remember, the question here made—is now before the Court of Errors. Having been argued once, and ordered to be re-argued, I mean to reserve my judgment in the premises until I shall have

had the benefit of the full argument expected. With this purpose, I will now sustain the Act of Congress on both points, without thereby committing myself with respect to my vote in the Court of Errors. And it is accordingly adjudged and decreed that the trustee of Mrs. Jones is only entitled to be paid the amount of his debt in the like amount of United States notes.

The claimant appealed, on the ground that the bond, having been made and become payable prior to the Act of Congress, passed in February, 1862, known as the "Legal Tender Act," should be paid in legal tender notes, with the difference of value in favor of gold added thereto.

*Wilkinson & Gilchrist,* for appellant.

*Duryea & Buist,* contra.

Oct. 9, 1869. The opinion of the Court was delivered by

WILLARD, A. J. This appeal is from an order establishing the right of a bond creditor of the intestate to assets, derived from the intestate estate. The Chancellor ruled that an installment on the bond that fell due November 12th, 1861, was subject, under the provisions of the Acts of Congress commonly known as the "Legal Tender Acts," to discharge by a payment in the Treasury notes of the United States, made a legal tender for the payment of debts. The bond was given before the war, and it is contended that, by the construction of the Acts in question, debts of that class are excepted from its operation, and can only be discharged in the currency prevailing at the time the obligation was incurred.

The counsel for the appellant, on the argument, made no question as to the constitutional power of Congress to pass the Acts, placing his case wholly upon what he claimed to be the true construction of the terms of the Act itself. It will, nevertheless, become necessary to look into the constitutional powers of Congress in relation to this subject, as a necessary element of the question of construction raised by the appeal.

This subject has been so often before the Courts, both Federal and State, and has been so ably stated in all its bearings, that it will only be necessary to state the conclusions bearing upon the question.

The contract to pay in lawful money means such currency as shall be lawful at the time of its actual fulfillment. It is, therefore, made, by the act of the parties, to depend, as to the medium by

which it may be discharged, upon the laws which shall subsist at the time of payment.

The legal tender Acts, extending from 1862 to 1864, concur in placing the various issues of Treasury notes, made under this authority, on the same footing, as it regards their capacity as money to discharge debts. The terms employed are, that such issues shall be "lawful money, and a legal tender in payment of all debts, public and private, except duties on imports," and interest, in case of certain transactions with the United States. No other exceptions are stated. The declaration that these issues shall be "lawful money" fixes their legal character, and draws them within the terms of contracts calling for payment in lawful money.

Their applicability to the payment of debts is to "all debts, public and private, within the United States," except certain specified obligations, not embracing the debt in suit. The exceptions to be allowed to the general expression employed, being fixed in express terms, it is not within the province of legal construction to seek to raise others by implication out of the spirit and policy of the Acts.

Unless it can be shown that Congress have no power to make Treasury notes a legal tender in payment of debts, the attempt to interpolate further exceptions must fail. It remains, therefore, only to examine the powers of Congress in the given case, under the Constitution.

A legal tender note is a contract, on the part of the Government, to pay its nominal value in coined dollars. Payment is not deferred by the terms of the promise, but results from the inability of the Government to satisfy it presently. It is not to be questioned that, if the legal tender note represented its nominal value in gold, to be drawn, at any moment, by the holder, it might be made a compulsory means of discharging contracts. If such is the case, the only reason that can be urged against the competency of the note, at the present time, for this purpose, is that the Government is unable to make specie payments, thus making the validity of laws, and the constitutional powers of Congress, to depend on the solvency of the Treasury, rather than on the terms of the Constitution.

It thus appears that the legal tender currency is based upon the gold and silver coinage of the country created under the power granted by the Constitution of the United States, (Art. I, Sec. 8,) "to coin money, and regulate the value thereof;" and the obligation expressed on the face of the note cannot be satisfied otherwise

than by payment of its nominal value in the coinage of the country, except with the consent of the holder.

But two things are observed in the relation of the Treasury note to the debt it discharges: First, the creditor is compelled to surrender a demand against his debtor for one against the Government; and, second, that the obligation of the Government is not immediately collectable or otherwise convertible into coin to its nominal value.

The authority of Congress to enforce such an exchange of obligations is derived from two sources: First, from the grant to it of supreme legislative power in all matters of national concern; second, from its connection with certain special subjects of legislation, placed by the Constitution within the legislative province of Congress.

The propositions that are to be sustained from the sources of authority are: First, that Congress may communicate to the national obligation the characteristics of a legal currency, so as to discharge contracts, soluble in "lawful money," generally; second, that this may be done when, from the circumstances of the Treasury, the transaction amounts to a forced loan.

All necessary and usual powers of Government, not denied in express terms, or by necessary construction, by the Constitution, must be deemed vested in either the National Government or in the States, severally. The power of making the obligations of the Government a legal tender is inhibited to the States, (Art. 1, Sec. 8,) who are prohibited from making anything but gold and silver lawful tender; therefore, if the power under consideration is vested at all, it must reside in the National Legislature. That this power is not prohibited by the Constitution need only be stated. The power of making its own obligations a legal tender is a necessary and usual power of Government. The historic proofs on which this proposition rests are too widely known to need repetition. It is indispensable in the exigencies that occur to national finance, and from which no country, and no known condition of civilization, is exempt. It is especially important as a means of employing the national credit when the public burdens over-tax the ordinary sources of revenue.

The Constitution of the United States has not left this power to be inferred upon such general grounds, but has imposed duties and conferred powers with which it is inseparably connected. It is not necessary to place this source of authority in the grant of power

to " coin money " alone. The powers of Congress extend to levy-- ing and collecting taxes, duties, imports and excises, and to paying the debts, and providing for the common defence and general welfare, and to borrowing money on the credit of the United States.

Without power to regulate the currency of the country, by giving validity to public obligations, one of the most important means of attaining the objects thus set forth by the Constitution would be withheld from Congress. This power can only disappear from the category of legislative powers by a suitable expression of the sovereign will.

The power " to regulate commerce among the several States " involves, from its nature, the necessity of regulating the currency. The regulation of commerce, whether regarded in reference to the relations of States or individuals, must begin with, and rest upon, a legal ascertainment of values. Not only the standards to be applied to intrinsic values must be fixed, but the proper representatives of such values, in the absence of coin, must be determined upon.

The proposition that the Government is at liberty to employ this power as a means of making its credit available to aid the Treasury, must rest mainly upon its authority to raise money by taxation or borrowing.—*Hylton* vs. *United States*, 3 Dall., 171. Any available means of attaining this end, falling within the general scope of legislative powers, and not inconsistent with the limitations of the powers of Congress, imposed by the Constitution, may be employed for this purpose. As to the necessity and appropriateness of such means, Congress is the judge, under its political responsibilities, so long as the power is actually exercised for a purpose intended by the Constitution. By the same right that the Government may require a citizen to contribute his property as an aid, it may demand that he shall give it a credit. Such is the effect, and the only effect, as bearing on the present question, of the making of a Treasury note a legal tender, in view of the condition of the national Treasury.

*Bronson* vs. *Rodes*, (7 Wal., 229,) and *Butler* vs. *Horwitz*, (7 Wal., 258,) decided in the Supreme Court of the United States, (Am. Law, Rev., April, 1869,) are inapplicable to the present case, as the contracts in those cases were, by their terms, to be discharged only by, a particular description of money.

There is no just reason for doubting the authority of Congress to

enact the provisions of the "Legal Tender Acts," as it regards antecedent debts; and, therefore, no ground exists to construe these Acts as inapplicable to the case under consideration.

The appeal must be dismissed.

*Moses,* C. J., concurred.